**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| LATHONIA BENNETT | ) **4:26-CV-01034-JD-PJG** |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAMSBURG COUNTY; WILLIAMSBURG | ) |
| COUNTY COUNCIL; KELVIN WASHINGTON, | ) |
| COUNTY SUPERVISOR, IN HIS OFFICIAL | ) **MOTION TO DISMISS** |
| CAPACITY; HIXON COPP, DIRECTOR OF | ) **FIRST AMENDED COMPLAINT AND** |
| ECONOMIC DEVELOPMENT, IN HIS OFFICIAL | ) **FOR ATTORNEY'S FEES AND COSTS** |
| CAPACITY; AMANDA SHULER, COUNTY | ) **BY DEFENDANTS** |
| ATTORNEY, IN HER OFFICIAL AND | ) **AMANDA SHULER AND** |
| INDIVIDUAL CAPACITIES; WILLIAMSBURG | ) **WILLIAMSBURG COUNTY** |
| COUNTY ECONOMIC DEVELOPMENT BOARD; | ) **DEVELOPMENT CORPORATION** |
| WILLIAMSBURG COUNTY DEVELOPMENT | ) |
| CORPORATION (WCDC), | ) |
| | ) |
| DEFENDANTS. | ) |
| _____ | ) |

**TO:    LATHONIA BENNETT, *PRO SE* PLAINTIFF**

Please take notice that Defendants Amanda Shuler, County Attorney in her official and individual capacities, and Williamsburg County Development Corporation, for the reasons set forth below, hereby move pursuant to FRCIVP Rule 12(b) for an order of this Court dismissing, with prejudice, all of your purported causes of action against them in this matter and requiring that you pay costs and attorneys' fees incurred by them in defending this action.

\*        \*        \*        \*        \*

Defendants Amanda Shuler, sued here in her official and individual capacities[1], and Williamsburg County Development Corporation ("WCDC")[2] move for dismissal of the first

_____

[1]    Ms. Shuler serves as attorney by contract to Williamsburg County; she is not an employee of Williamsburg County.

1

Amended Complaint (Dkt. No. 18, the "First Amended Complaint") in this action due to its failure to state a claim on which relief can be granted (FRCɪᴠP Rule 12(b)(6)).[3]

## I.      STANDARD OF REVIEW

### A.      The Applicable Rule, FRCɪᴠP RULE 12(b)(6)

FRCɪᴠP Rule 12(b)(6) permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court should grant a motion to dismiss if a plaintiff fails to plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

At a minimum, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCɪᴠP Rule 8(a)(2). That is, it must contain sufficient factual matter to "state a claim to relief that is plausible on its face," showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570). It is

---

[2]      WCDC is a private, not-for-profit corporation, organized under the laws of South Carolina, as reflected in the public records of the South Carolina Secretary of State. https://businessfilings.sc.gov/BusinessFiling/Entity/Profile/6baf8a06-51cf-4e9b-94c8-4746ff74be0c

[3]      The currently-operative First Amended Complaint is dated March 11, 2026, and was filed by the Clerk on March 24, 2026, at 10:24 a.m. Prior to that filing, however, Plaintiff on March 23, 2026 at 7:42 p.m., sent to the undersigned counsel by email "Plaintiff's Motion for Leave to File Second Amended Complaint." The Clerk received and filed that Motion for Leave to File Second Amended Complaint as Dkt. No. 26 on March 30, 2026. The Motion for Leave to File Second Amended Complaint did not attach any proposed Second Amended Complaint. Rather, it attached an "Exhibit Index and Supporting Allegations in Support of Plaintiff's First Amended Complaint." This Motion to Dismiss does not address that Motion for Leave to File a Second Amended Complaint or its attachment. Defendants Ms. Shuler and WCDC reserve the right to assert all defenses against those pleadings if and when they are accepted by the Court.

therefore not sufficient for a plaintiff to allege facts that are "merely consistent with" a defendant's liability. *Id.* Instead, the factual allegations must produce an inference of liability strong enough to move the plaintiff's claims "across the line from conceivable to plausible." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 256 (4th Cir. 2009). Although the Court must assume the truth of a plaintiff's well-pled allegations when considering a motion to dismiss, "[it] need not accept a complaint's legal conclusions. . . . Thus, simply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard." *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 212 (4th Cir. 2019). See also *Twombly,* 550 U.S. at 555 (2007).

Under FRCIvP Rule 12(b)(6), a court should weed out undeserving complaints before parties engage in expensive discovery. *Id.*, 550 U.S. at 559 (2007).[4]

---

[4]    As a pro se litigant, Plaintiff's pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*). However, even under this less stringent standard, the pro se pleading remains subject to summary dismissal. The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct Plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

*Moore v. Off. of the Att'y Gen.*, No. CV 8:17-752-RMG-JDA, 2017 WL 2270021, at *2 (D.S.C. May 3, 2017), report and recommendation adopted, No. 8:17-CV-752-RMG, 2017 WL 2255817 (D.S.C. May 23, 2017).

### B.    The Federal Nexus: 42 U.S.C. § 1983

Plaintiff originally brought this case in South Carolina state court. The Defendants other than Ms. Shuler and WCDC removed it to federal court pursuant to 28 U.S.C. § 1446 due to Plaintiff's assertion of federal law claims (specifically, allegations of violation of 42 U.S.C. §§ 1983 and 1985, and a demand for attorneys' fees under § 1988). In her post-removal First Amended Complaint, Plaintiff continues her claim under 42 U.S.C. § 1983 (and her claim for attorneys' fees under § 1988). She premises her § 1983 claims on alleged violations of her First and Fourteenth Amendment rights under color of state law.

"Conduct violating state law without violating federal law will not give rise to a § 1983 claim." *Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 145 (4th Cir. 2014) (internal citation omitted). "If a complaint asserts a § 1983 claim that fails to allege a violation of a cognizable federal right, it is subject to dismissal under Rule 12(b)(6)." *Hart v. City of Santee*, No. 5:16-CV-03338-JMC, 2017 WL 3158779, at *4 (D.S.C. July 25, 2017) (internal citation omitted).

> As the Supreme Court has explained, "section [1983] is not itself a source of substantive rights, but a method for vindicating *federal* rights elsewhere conferred by those parts of the *United States Constitution* and *federal statutes* that it describes." *Baker v. McCollan*, 433 U.S. 137, 144 n.3 (1979) (emphasis added). As a result, it is well-settled that "violations of state law are not cognizable under § 1983," *Love v. Pepersack*, 47 F.3d 120, 124 n.5 (4th Cir. 1995), such that "[c]onduct violating state law without violating federal law will not give rise to a § 1983 claim." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014) (citing *United States v. Van Metre*, 150 F.3d 339, 347 (4th Cir. 1998)); *see also Gantt v. Whitaker*, 57 Fed.Appx. 141, 146 (4th Cir. 2003) (citing *White ex rel. White v. Chambliss*, 112 F.3d 731, 738 (4th Cir. 1997)). Accordingly, to the extent Plaintiff's complaint alleges a violation of a state law duty to conduct an adequate investigation, the court concludes such a duty, alone, provides no basis for any of Plaintiff's § 1983 claims.

*Id.*, at *5.

4

### C. Supplemental Jurisdiction over Pendent State Claims

In addition to being an insufficient underpinning for an action under 42 U.S.C. § 1983, Plaintiff's allegations of state law violations for which she claims supplemental jurisdiction, are, once the federal claims are dismissed, no longer appropriate for determination by this Court. "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). See also *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) ("In all those contexts [*including where "the district court 'has dismissed all claims over which it has original jurisdiction'"*] . . . the court may (and indeed, ordinarily should) kick the case to state court"). Accord, *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) ("'[g]enerally, when a district court dismisses all federal claims in the early stages of litigation' — e.g., at the summary-judgment stage — 'it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice.'" (internal citation omitted)).

## II.    ARGUMENT IN SUPPORT OF DISMISSAL

### A. The purported claims under § 1983 are state law claims that do not invoke cognizable federal law rights.

Plaintiff premises her § 1983 claims on alleged violations of her First and Fourteenth Amendment rights under color of state law related to (i) the County's alleged non-compliance with South Carolina's Freedom of Information Act (S.C. Code of Laws § 30-4-10 et seq.); (ii) the County Council's purported violation of its alleged duty to consider and act upon citizen petitions presented to it demanding legislative action; (iii) the County Council's purported violation of its alleged duty to establish a Board of Zoning Appeals; and (iii) the County's alleged discrimination in its adoption and sponsorship of economic development initiatives. Each of these premises fails as a matter of law.

5

1.  Violations of State FOIA laws do not support § 1983 claims.

The rule cited above that "[c]onduct violating state law without violating federal law will not give rise to a § 1983 claim" applies in full force in cases of alleged Freedom of Information Act ("FOIA") violations. Federal courts have consistently held that violations of state FOIA laws, standing alone, do not give rise to federal civil rights claims because they implicate only state law rights, not federally protected constitutional or statutory rights. The United States Supreme Court has been emphatic on that point.

> This Court has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws. See *Houchins v. KQED, Inc.,* 438 U.S. 1, 14, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (plurality opinion) (" 'The Constitution itself is [not] a Freedom of Information Act' "); see also *Los Angeles Police Dept. v. United Reporting Publishing Corp.,* 528 U.S. 32, 40, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999) (the Government could decide "not to give out [this] information at all"); *Sorrell v. IMS Health Inc.,* 564 U.S. ——, ——, 131 S.Ct. 2653, 2677, 180 L.Ed.2d 544 (2011) (BREYER, J., dissenting) ("[T]his Court has *never* found that the *First Amendment* prohibits the government from restricting the use of information gathered pursuant to a regulatory mandate").

*McBurney v. Young*, 569 U.S. 221, 232 (2013). And the Fourth Circuit and federal district courts in South Carolina have concurred.

> [T]here is no general First Amendment right to access a government record. The Supreme Court has ruled that the First Amendment does not "guarantee the public a right of access to information generated or controlled by government." *See Houchins v. KQED, Inc.*, 438 U.S. 1, 16, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (Stewart, J., concurring in the judgment).

*Fusaro v. Cogan*, 930 F.3d 241, 249 (4th Cir. 2019).

> [A] violation of a state law is insufficient by itself to implicate the interests that trigger a federal due process claim. *See Kowalski v. Berkeley Cnty. Schools*, 652 F.3d 565, 576 (4th Cir. 2011). Thus, Plaintiff's alleged violation of the South Carolina FOIA does not allege a claim for a violation of federal due process, and this Court does not have federal question jurisdiction over this action. *See Griffin v. S.C. Dep't of Probation*, C/A No. 2:09-2136-PMD, 2009 WL 4016118, at *1–2 (D.S.C. Nov. 19, 2009) (finding that Plaintiff's attempt to create a due process claim for an alleged violation of the S.C. FOIA did not give rise to a federal question); *Otts v. Saluda Cnty. Sheriff's Dep't*, C/A No. 8:16-2830-TMC-KFM, 2016 WL 6638089, at *3 (D.S.C. Sept. 28, 2016) (finding that Plaintiff's alleged

6

violation of S.C. FOIA did not allege a federal law claim), *adopted by* 2016 WL 6627947 (D.S.C. Nov. 9, 2016).

*Moore v. Off. of the Att'y Gen.*, No. CV 8:17-752-RMG-JDA, 2017 WL 2270021, at *2 (D.S.C. May 3, 2017), report and recommendation adopted, No. 8:17-CV-752-RMG, 2017 WL 2255817 (D.S.C. May 23, 2017).

2.  A legislative body has no duty, under federal or even under state law, to consider and act upon citizen petitions presented to it demanding legislative action.

Plaintiff asserts that Williamsburg County Council's failure to debate and to act formally upon her proposed motions was somehow a violation of her rights, vaguely referring to some unsourced, uncited "[s]tandard legislative practice, and the constitutional and common law duties of governing bodies." See, *e.g.*, First Amended Complaint, Paragraphs 56-57 and Prayer for Relief, clause (e).

But it is a commonplace that legislative bodies control their own agendas and can choose on which topics they will and will not spend time. Even when offered by an elected member of the legislative body, a motion can fail and receive no debate or formal consideration for want of a second. "If there is no second, the motion is not put before the group for discussion or decision." Robert's Rules of Order Newly Revised In Brief (3rd ed.), Chapter 3(C)(2), citing Robert's Rules of Order Newly Revised (12th ed.) 4:9-14.

Plaintiff tries to shoehorn a right to formal action on her proposed resolutions into the First Amendment's right to petition for the redress of grievances. But there is no such right.

> The true meaning of the Petitions Clause is undeceptively simple. The right to petition has traditionally served a vital communicative function between sovereign and citizen. That requirement of an open channel of communication is precisely what the right to petition embodied in the Constitution encompasses. The right does not impose a correlative obligation on the part of Congress to treat petitions with any particular degree of attention, nor does it say anything about the subject matter jurisdiction of the federal courts. As Freud might have said,

7

> sometimes a right to petition the government for a redress of grievances really is just a right to petition the government for a redress of grievances.

Gary S. Lawson & Guy I. Seidman, "Downsizing the Right to Petition," 93 <u>Northwestern University Law Review</u> 739 (1999) (available at: https://scholarship.law.bu.edu/faculty_scholarship/2584). <u>See also</u> John Inazu and Burt Neuborne, "Right to Assemble and Petition: Common Interpretation" at https://constitutioncenter.org/the-constitution/amendments/amendment-i/interpretations/267 ("Today in Congress and in virtually all 50 states . . . "petitions [*are*] routinely entered on the public record absent any obligation to debate the matters raised, or to respond to the petitioners.")

As a next gambit, Plaintiff claims that the failure to act was retaliation for her protected First Amendment activity.

> To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019) (internal citation omitted). Here, Plaintiff is claiming that the refusal to take up her petition chills her exercise of her right to petition. (She does not allege the required element, as logically she cannot, that but for her petition County Council would have considered her petition.) Aside from causation, it is also obviously not the case that County Council's action has chilled her First Amendment activity, as she continues to exercise her First Amendment rights in copious fashion. Moreover, if such a claim could be recognized, it would confer a right to have a petition acted upon, which (as noted above) is <u>not</u> a recognized First Amendment (or other) right.

The First Amended Complaint does not allege other than in conclusory fashion that Defendants' actions and inactions were motivated by her First Amendment activity, relying solely on the "temporal proximity between service of litigation on February 13, 2026 and the Council's non-action at the February 17, 2026 meeting." First Amended Complaint, Paragraph 40. But it is just as plausible that the County failed to act on her proposals for the perfectly lawful reason that it did not believe the demanded legislative action was in the best interest of the County that they represent. The First Amended Complaint thus fails to meet the standard of *Iqbal, supra*, which requires showing "more than a sheer possibility that a defendant has acted unlawfully." As elaborated by the Fourth Circuit, that standard means that "simply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard." *ACA Fin. Guar. Corp.*, *supra* at 212.

What Plaintiff is attempting by seeking a right to impose topics on the County Council through her requested mandamus or declaratory relief is the enlistment of the judicial branch in her hoped-for hijacking of Williamsburg County's legislative process. If she has the rights that she claims, she would be able to completely control the agenda of each Council meeting, simply by propounding resolutions for it to consider. But, if she has such rights as a citizen of Williamsburg County, then every other citizen of Williamsburg County would have the same right. Just as she can demand that an action item be placed on the agenda, any other citizen could demand that her proposal be removed from the agenda. Not only is there no such federal right; but the Constitution and statutes of South Carolina on county governance likewise require no such absurdity.[5]

---

[5] The powers vested in each South Carolina county are exercisable "by the respective governing bodies thereof." S.C. Code § 4-9-30. Each one can establish and, pursuant to law, modify its own agendas. S.C. Code § 30-4-80. Moreover, public participation at a meeting can be limited by the governing body. "One can easily anticipate the problematic results" if it could not. *Croft as*

3. <u>A County Council in South Carolina has no duty to establish a Board of Zoning Appeals, and its failure to establish one does not deprive any County resident of a federally protected right.</u>

Plaintiff asserts that she has "constitutionally protected liberty and property interests," of which she was deprived by (among other things) Defendants' "denying [her] access to a functioning BZA [*board of zoning appeals*]." First Amended Complaint, Paragraphs 52-53.[6] See also Paragraphs 33-35. As with virtually all of her First Amended Complaint, Plaintiff nowhere identifies what gives her a right to such activities or enactments.

In her original Complaint (Dkt. No. 1-3, Paragraph 84, at p. 21), Plaintiff had stated "S.C. Code § 6-29-780 **mandates** that any county regulating land use shall establish a Board of Zoning Appeals." [Emphasis in the original Complaint.]

But S.C. Code § 6-29-780 manifestly does no such thing. Rather it states quite plainly: "As a part of the administrative mechanism designed to enforce the zoning ordinance, the zoning ordinance **may** provide for the creation of a board to be known as the board of zoning appeals." [Emphasis added.] "The use of the word 'may' signifies permission and generally means that the

---

*Tr. of James A. Croft Tr. v. Town of Summerville*, 428 S.C. 576, 594, 837 S.E.2d 219, 228 (Ct. App. 2019), *cert. granted and vacated as moot*, 433 S.C. 473, 860 S.E.2d 352 (2021). The South Carolina Code of Laws is explicit that a single individual cannot control a Council's legislative agenda or a County's legislative outcomes. While South Carolina law does allow citizens to put to Council's consideration the adoption or repeal of certain ordinances, it requires that the initiative to do so have the support of 15% of the voters in that County. See S.C. Code § 4-9-1210 through -1230, and with respect to the creation of special purpose tax districts (the subject of one of Plaintiff's agenda demands), § 4-9-30(5)(a)(i). So, the options open to Plaintiff are: (i) elect candidates to office who agree with her policy proposals; or (ii) get 15% of her fellow Williamsburg County voters to sign petitions that would require County Council to take up the issue; or (iii) if County Council disagrees with a petition-initiated proposal, win a referendum among her fellow voters for that proposition. There is, however, no option available under law for Plaintiff simply to demand that she be put in charge of the Williamsburg County legislative agenda and to have a Court support her in that demand. Plaintiff has not alleged that she attempted to utilize the initiative processes allowable to her and was unlawfully thwarted. She thus fails to state any claim on which relief can be granted with respect to the primary relief that she seeks.

[6]     The other "deprivations" alleged in Paragraph 53 relate to FOIA and failure to take formal action on Plaintiff's proposed resolutions, both dealt with above.

action spoken of is optional or discretionary. This is the ordinary significance of the use of the word "may", and nothing appears to require that it be given any other meaning in the present statute." *State v. Wilson*, 274 S.C. 352, 356, 264 S.E.2d 414, 416 (1980). See also *Bouarfa v. Mayorkas*, 604 U.S. 6, 13–14 (2024) ("As This Court has repeatedly observed, the word 'may' *clearly* connotes discretion." [cleaned up].)

The presence of the discretionary element defeats Plaintiff's claim for a writ of mandamus, by the most venerable of precedents. *Marbury v. Madison*, 5 U.S. 137, 169–70 (1803). According to "the traditional practice . . . [, t]he mandamus remedy was normally limited to enforcement of 'a specific, unequivocal command,' the ordering of a 'precise, definite act ... about which [an official] had no discretion whatever.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004). Accord, *Cent. S.C. Chapter, Soc. of Pro. Journalists, Sigma Delta Chi v. U.S. Dist. Ct. for Dist. of S.C.*, 551 F.2d 559, 561–62 (4th Cir. 1977) ("A writ of mandamus is not a substitute for an ordinary suit. It will issue only where the duty to be performed is ministerial and the obligation to act peremptory and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable."

Thus, there is no individual, personal liberty or property interest in, and no right to judicially require, the establishment of a board of zoning appeals.

4. <u>The First Amended Complaint does not allege discrimination prohibited by the Fourteenth Amendment in the County's adoption and sponsorship of economic development initiatives.</u>

Plaintiff asserts that she (or, more specifically, Just Us Community Perpetualization Project, LLC ("Just Us CPP"[7]) was treated unfavorably in comparison with certain "comparators" that she

---

[7]     Paragraph 1 of the First Amended Complaint, under "Parties," identifies "JustUs Community Perpetualization Project, LLC," and names Plaintiff Dr. Bennett as its "founder and

claims to be "similarly situated." First Amended Complaint, Paragraph 48. She alleges that those comparators are "corporate entities" that are "commercial and corporate develop[ers]" (First Amended Complaint, Paragraph 22) and "commercial entities and development organizations" (First Amended Complaint, Paragraph 48).

That characterization of the "comparators" is in stark contrast to her characterization of Just Us CPP as "a nonprofit and community development organization dedicated to civic participation, economic equity, affordable housing, workforce development, broadband access, and environmental protection for the Citizens of Williamsburg County" (First Amended Complaint, at Paragraph 1) and of herself as "a business owner, and a community activist who has publicly advocated on matters of public concern affecting Williamsburg County residents, including transparency in economic development, equitable distribution of public resources, environmental protection, and structural governance reform" (First Amended Complaint, at Introduction, first paragraph).

The contrast is no less stark in describing what the comparators sought and what Plaintiff Bennett/Just Us CPP sought. The comparators were putting forward "commercial development proposals" and "corporate development proposals;" whereas Bennett/Just Us CPP were putting forward "governance proposals" and "community governance proposals." First Amended Complaint, Paragraphs 25 and 48.

By the First Amended Complaint's own allegations, then, the "comparators" are not similarly situated – they are for-profit business entities, whereas Bennett/Just Us CPP are community activists. Moreover, the government action that they are each seeking is different –

---

operator." Regarding Just Us CPP, <u>see also</u> First Amended Complaint, Introduction, first paragraph, and Paragraph 12.

the "comparators" are seeking business approvals for investments and commercial activity, whereas Bennett/Just Us CPP are seeking changes in government structure and conduct.

Individual and non-profit community activists are not a suspect or quasi-suspect classification; and formal action on a request for ordinance adoption is (as discussed above) not a fundamental right. Consequently, Plaintiff's claim for discrimination as compared to the "comparators" must be measured by the "rational basis" test.

> [A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."

*Heller v. Doe by Doe*, 509 U.S. 312, 319–20, 113 S. Ct. 2637, 2642, 125 L. Ed. 2d 257 (1993) (internal citations omitted). It is more than rational, and indeed requires no imagination at all to understand, that a legislative body elected to represent the interests of all the residents of Williamsburg County would treat differently proposals that would affect the tax base and employment levels in the County differently from proposals that would affect the structure and processes of government.

Plaintiff alleges unlawful discrimination because dissimilar entities seeking dissimilar government actions that would have dissimilar economic, social, and community effects got what they wanted and that she (dissimilar in all alleged respects) did not get what she wanted. But if that were the test for an Equal Protection violation, then everyone would have a Fourteenth Amendment right to get whatever he wanted from a governmental body. Not only is

such a position absurd; it is a logical impossibility, as one applicant may want one outcome and a competing applicant may want exactly the opposite outcome.[8]

## B. Plaintiff cannot assert claims that belong to nonparty Just Us CPP.

Although Lathonia Bennett is the only Plaintiff identified in the caption of the First Amended Complaint, Paragraphs 15, 19, and 38 of the First Amended Complaint state that her submissions of resolutions to defendant Williamsburg County Council – which submissions form the central allegation of the First Amended Complaint that is the basis for its Prayer for Relief, clause (e) – were "on behalf of Just Us CPP." The defendant County Council's alleged failure to consider adequately those resolutions submitted "on behalf of Just Us CPP" constitutes the gravamen of the First Amended Complaint's Count I (Paragraph 40), Count II (Paragraph 44), Count III (Paragraph 48), Count IV (Paragraph 53), and Count V (Paragraphs 56 and 57).

Additional alleged harm sought to be remedied by the First Amended Complaint is specifically described as harm to non-party Just Us CPP rather than to Plaintiff Bennett in: "Factual Allegations" (Paragraph 36: "harm including loss of economic opportunities for Just Us CPP and its partner organizations, denial of access to public resources and economic development programs"); Count I (Paragraph 40: "denying Just Us CPP equal access to economic development resources available to commercial entities"); Count III (Paragraph 48: "treated Plaintiff and Just Us CPP materially differently from similarly situated commercial

---

[8]     Plaintiff also alleges discrimination in that "Defendant council officials" publicly mentioned this entirely public lawsuit but that she "is not aware of" those officials' having mentioned other lawsuits against the County (First Amended Complaint, Paragraphs 26-27, and 49). She accompanies this charge with a bare, conclusory allegation that the reference to this lawsuit was done in retaliation for her exercise of her First Amendment rights (*id.*). Whether these allegations are meant as a First Amendment retaliation claim (which seems to be the case in Paragraph 27) or an Equal Protection claim (which seems to be the case in Paragraph 49) or some combination of the two, they nevertheless fail to state a claim on either basis for the reasons stated in the text above regarding retaliation and rational basis scrutiny.

14

entities and development organizations"); and Count VII (Paragraph 63: "blocking Just Us CPP's community initiatives").

Elsewhere, Plaintiff Bennett seeks to bootstrap herself into claims that, as stated, would belong to Just Us CPP: *id.*, at Count III, Paragraph 48; and Count IV, Paragraph 52 ("Plaintiff has constitutionally protected liberty and property interests, including: her interest as a nonprofit operator in accessing publicly available economic development resources and programs on a non-discriminatory basis"). The First Amended Complaint's attempt to conflate Plaintiff Bennett's interests with those of Just Us CPP is made more transparent by Plaintiff's later filings that include Just Us CPP as a plaintiff in the caption of the filings. See Dkt. Nos. 32, 33, and 35.

But Just Us CPP is, in fact, not a plaintiff and, as this case is currently structured, cannot be.

Each of the Civil Action Cover Sheet (Dkt. No. 1-3, p. 1), the Summons (Dkt. No. 1-3, p. 6), and the First Amended Complaint (at p. 12) recites that this case is brought by Lathonia Bennett, *pro se*. The public records of the South Carolina Bar confirm that Dr. Bennett is not a lawyer licensed to practice law in South Carolina. No other lawyer is named as representing either Dr. Bennett or Just Us CCP. She is acting "*pro se*," that is, "for <u>herself</u>.

But Just Us CCP is a corporation, a separate juridical entity from Dr. Bennett. And "a non-lawyer cannot represent a corporation in circuit or appellate courts.' *Renaissance Enters., Inc. v. Summit Teleservices, Inc.*, 334 S.C. 649, 651, 515 S.E.2d 257, 258 (1999). See also *State ex rel. Daniel v. Wells*, 191 S.C. 468, 5 S.E.2d 181, 186 (1939), <u>holding modified by</u> *In re Unauthorized Prac. of L. Rules Proposed by S.C. Bar*, regarding appearances in civil magistrate court, 309 S.C. 304, 422 S.E.2d 123 (1992) ("[A corporation] cannot appear by an officer of the corporation who is not an attorney, and may not even file a complaint except by an attorney,

15

whose authority to appear is presumed; in other words, a corporation cannot appear in propria persona.")

Consequently, Just Us CCP is not a proper party to this case. Not only does that mean that any claims asserted on its behalf against Defendants Ms. Shuler and WCDC must be dismissed; it also means that Just Us CCP is not a vehicle to confer standing on Dr. Bennett. And Dr. Bennett, individually, is without standing for all claims where the alleged harm is to Just Us CCP. *See Joytime Distributors and Amusement Co., Inc. v. State*, 338 S.c. 634, 639-40, 528 S.E.2d 647, 649-50 (1999) ("A private individual may not invoke the judicial power to determine the validity of an executive or legislative act unless the private individual can show that, as a result of that action, a direct injury has been sustained, or that there is immediate danger a direct injury will be sustained. . . . Moreover, the injury must be of a personal nature to the party bringing the action, not merely of a general nature which is common to all members of the public." [internal citations omitted]). For lack of standing, each claim in which the alleged harm is to Just Us CCP, the Complaint should be dismissed.

**C.          Plaintiff asserts no cognizable claim against Ms. Shuler.**

Ms. Shuler is an attorney in private practice who is retained by Williamsburg County. She provides legal advice and counsel to her client, upon the client's request. Plaintiff does not allege, as she cannot, that Plaintiff is Ms. Shuler's client or that there is any attorney-client relationship between Ms. Shuler and Plaintiff.

The only allegations against Ms. Shuler – other than as lumped in with allegations against "Defendants" – are (i) that she was "the <u>legal advisor</u> present at and involved in the council proceedings" where the resolutions that Plaintiff submitted on behalf of Just Us CPP were not acted upon and that she "participated in the decisions and proceedings that restricted" Plaintiff's FOIA

16

access (Paragraph 6), and (ii) that "the involvement of Defendant Shuler <u>as County Attorney</u> in authorizing or facilitating the actions [of Williamsburg County] described herein" constituted evidence of a County policy (Paragraph 35). [Emphasis added.]

But issues concerning whether a non-client can sue a lawyer are matters of State law. *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 83 (1994). See also *Fleming v. Asbill*, 42 F.3d 886 (4th Cir. 1994) (Fourth Circuit applying South Carolina law); and *Schatz v. Rosenberg*, 943 F.2d 485 (4th Cir. 1991) (Fourth Circuit applying Maryland law).

South Carolina law is plain: "[A]n attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." *Gaar v. N. Myrtle Beach Realty Co.*, 287 S.C. 525, 528, 339 S.E.2d 887, 889 (Ct. App. 1986). *See also Fleming*, *supra* at 890 ("So long as an attorney acts in his client's interests, and not for personal or malicious reasons, he is immune from suit to an opposing party.") The Rules of Professional Conduct that govern a lawyer's conduct with clients, non-clients, and tribunals, are to the same effect:

> (7)     Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. . . . The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.

South Carolina Rules of Professional Conduct, at SCACR, Rule 407, "Scope," para. 7.

Plaintiff has attempted (but failed) to disparage the professional competence and integrity of Ms. Shuler; but even had she succeeded, she has alleged no principle of law that would entitle her to any relief in this Court.

17

### D.     Plaintiff asserts no cognizable claim against WCDC.

The First Amended Complaint notes that WCDC is "a corporation registered with the South Carolina Secretary of State." First Amended Complaint, Paragraph 8.[9] Although Paragraph 32 alleges that WCDC has some historic and ongoing connections with Defendant Williamsburg County, and Paragraph 29 alleges that Plaintiff submitted FOIA requests for, among other things, "WCDC records," the First Amended Complaint does not allege any specific conduct by WCDC other than as a part of "Defendants." Such conclusory allegations, especially against an entity that is not a governmental body with the ability to do or not do the things complained of, are totally inadequate to meet the *Iqbal* standard to avoid dismissal.

### III.     REQUEST FOR ATTORNEYS' FEES AND COSTS

If the Court grants this FRCIvP Rule 12(b) motion of Defendants Ms. Shuler and WCDC or if at any later time those Defendants become a "prevailing party," these Defendants hereby move also for an order of this Court requiring Plaintiff Dr. Bennett to pay to them a reasonable attorney's fee as part of the costs, pursuant to 42 U.S.C. § 1988.

Defendants Ms. Shuler and WCDC also reserve the right, at the appropriate time, to move for an order of this Court requiring Plaintiff Dr. Bennett to pay to them excessive costs under 28 U.S.C. § 1927.

---

[9]     The First Amended Complaint, Paragraph 8, refers to an "Exhibit F" related to WCDC. No Exhibit F, or any other Exhibit, appears to the First Amended Complaint. The First Amended Complaint does not refer to any other Exhibit.

**COMPLIANCE WITH LOCAL CIVIL RULES REGARDING MOTIONS**

Because this motion is one to dismiss and because Plaintiff is proceeding *pro se*, no pre-filing consultation with opposing counsel is required by Local Civ. Rule 7.02 (D.S.C.) with respect to this motion.

As this Motion contains a full explanation of the reasons therefor, no separate supporting memorandum is required by Local Civ. Rule 7.04 (D.S.C.)

April 7, 2026

Respectfully submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**

By:  s/Steve A. Matthews
        Steve A. Matthews
        Federal ID No. 5119
        smatthews@hsblawfirm.com
1201 Main Street  (29201-3226)
P.O. Box 11889  (29211-1889)
Columbia, South Carolina
803.540.7827
*Counsel for Defendants Amanda Shuler and Williamsburg County Development Corporation*

19