# SUPPLEMENTAL EXHIBIT ADDENDUM TO SECOND AMENDED COMPLAINT

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA — FLORENCE DIVISION Bennett v. Williamsburg County, et al. | Civil Action No. 4:26-cv-01034-JD-PJG**

**Filed pursuant to:** Fed. R. Civ. P. 15(d) (supplemental pleading) and the Court's May 1, 2026 Order (ECF No. 78) directing complete proposed amendment with all attachments.

**Purpose:** This Addendum identifies twenty-three (23) supplemental sub-exhibits obtained or finalized after the May 9, 2026 Exhibit Index was filed. Each is appended to a parent exhibit letter already on the Index and is offered to authenticate, corroborate, or expand the factual record on a specific count of the Second Amended Complaint. No new exhibit letters are introduced; all additions are sub-exhibits attached to existing letters A, L, N, P, and T.

---

## I. ADDED SUB-EXHIBITS

| Sub-Exhibit | Parent Exhibit / Subject | Description | Evidentiary Purpose | Count(s) |
|---|---|---|---|---|
| A-06 | A — Ord. 2023-05 SSRC | Project Ingka Solar Composite (PDF) | Authenticated composite of the SSRC ordinance and related approvals | II, IV, VII |
| A-07 | A — Ord. 2023-05 SSRC | Plaintiff's FOIA inspection request (March 3, 2026) to County Clerk Tammi McClary re: "lawsuit involving Ingka IRI Forest, Inc. and Williamsburg County" | Predicate establishing Plaintiff's lawful SC FOIA inspection request; sets up Copp's denial response (A-09) | IV, V, VII |
| A-08 | A — Ord. 2023-05 SSRC | SR Georgetown LLC — Georgetown County FILOT Agreement (4899-8507-2960) | **Class-of-one comparator:** Georgetown County properly disclosed parcels; Williamsburg's 2023-05 left them blank | III, IV |
| A-09 | A — Ord. 2023-05 SSRC | Hixon Copp denial response (March 13, 2026) — *"Economic development has* | **Parallel-denial smoking gun.** FRE 801(d)(2) party admission by Defendant Copp. Mirrors | I, IV, V, VII |

| Sub-Exhibit | Parent Exhibit / Subject | Description | Evidentiary Purpose | Count(s) |
|---|---|---|---|---|
| | | *not been involved in, nor is aware of any, lawsuit pertaining to INGKA Investments vs. Williamsburg County."* — forwarded by County Clerk McClary, CC'd to mshuler@attorneyssc.com (Shuler firm) | Carter's "does not yet exist" template (Ex. P): formal denial of the existence of something demonstrably on the public record (A-11 below establishes the actually-existing Ingka-related litigation). The Shuler firm's inclusion on the CC line documents another Opportunity-to-Clarify failure. Supports Count VII conspiracy and the SAC's allegation that "At no time has Council announced in open session any litigation by or against corporate entities including Ingka Group." | |
| A-10 | A — Ord. 2023-05 SSRC | Sunbelt Rentals mechanics lien against Kingstree West / Ingka (April 19, 2026) | **Direct proof an Ingka-related lien/litigation existed,** demonstrating the falsity of Copp's March 13, 2026 denial in A-09. Supports the SAC's "Council never disclosed" allegation. | IV, VII |
| A-11 | A — Ord. 2023-05 SSRC | "Months of obfuscation: Ikea's evidence destruction costs $566K" — HR Dive article (July 30, 2024; archived April 20, 2026) | **FRE 404(b)(2) pattern-of-conduct / notice evidence.** A federal judge sanctioned Ikea $566,000 for spoliation of evidence in age-discrimination class actions (Donofrio / Antonelli / Paine v. Ikea US Retail) — destroying HR/management emails after a 2022 preservation order. Offered for the limited non-character purposes of (a) showing the SSRC partner's documented prior pattern of evidence destruction relevant to Plaintiff's March 27, 2026 device-intrusion / litigation- | I, VII |

| Sub-Exhibit | Parent Exhibit / Subject | Description | Evidentiary Purpose | Count(s) |
|---|---|---|---|---|
| | | | document-destruction allegation (Ex. Z), and (b) notice to the County of its SSRC partner's conduct record. Not offered for the truth. | |
| A-12 | A — Ord. 2023-05 SSRC | "Ikea fined $1.3 million over spying campaign in France" — AP News (June 15, 2021) | **FRE 404(b)(2) pattern-of-conduct / notice evidence.** A French Versailles court convicted two former Ikea France executives and fined Ikea ~€1.1M (~$1.3M) for a 2009-2012 espionage scheme targeting union representatives, employees, and customers. Offered for the limited non-character purposes of (a) showing the SSRC partner's documented prior pattern of surveillance of advocates relevant to Plaintiff's protected First Amendment activity and the device-intrusion allegations (Ex. Z), and (b) notice to the County of its SSRC partner's conduct record. Not offered for the truth. | I, VII |
| L-06 | L — WCDC corporate records / dual role | 1995 SoS filing — Frank Hilton McGill | Founding-document support for *Brentwood Acad.* state-actor analysis | III, VII |
| L-07 | L — WCDC corporate records / dual role | WCDC adoption by Billy Jenkinson | Direct documentary support for the Jenkinson dual-role allegation | II, III, VII |
| L-08 | L — WCDC corporate records / dual role | WCDC registered agent record — Gilleon Frieson | Connects WCDC's registered agent to the SSRC pre-execution communications chain (Exhibits D, CC) | II, IV, VII |

| Sub-Exhibit | Parent Exhibit / Subject | Description | Evidentiary Purpose | Count(s) |
|---|---|---|---|---|
| L-09 | L — WCDC corporate records / dual role | WCDC address change to WCEDB address | Direct documentary evidence of interlocking WCDC / WCEDB governance — supports state-actor finding under *Brentwood* | II, III, VII |
| L-10 | L — WCDC corporate records / dual role | WCDC registered agent record showing Hixon Copp | Confirms Copp's simultaneous role as County Director of Economic Development AND WCDC registered agent — supports Count VII conspiracy and Copp individual-capacity liability | I, III, IV, VII |
| L-11 | L — WCDC corporate records / dual role | SoS entity profile — several changes of WCDC registered agent | Documents pattern of WCDC governance shifts; supports continuing-violation theory | II, III, VII |
| N-03 | N — Absence of mandatory environmental review | Kingstree East Project Review Package — Part 1 (May 13, 2026) | Updated FWS environmental review package — documents the patchwork third-party review the County failed to require | III, IV |
| P-02 | P — Carter's "does not yet exist" statement re JustUs CPP | Williamsburg County Development Holdings, LLC — Ronald D. Carter, Jr. named principal | Structural-conflict evidence: while serving as Santee Electric's Manager of Economic Development & Government Relations AND as WCDC Treasurer, the same Ronald D. Carter, Jr. personally holds principal interest in a "Williamsburg County Development Holdings, LLC" using the County's name. Supports Count VII conspiracy and the interlocking-governance allegations. | VII |
| P-03 | P — Carter's "does not yet exist" statement re JustUs CPP | SC Secretary of State entity profile — Williamsburg County Development Holdings (WCDH) | Independent SoS record corroborating WCDH's existence and Carter's principal interest therein | VII |

| Sub-Exhibit | Parent Exhibit / Subject | Description | Evidentiary Purpose | Count(s) |
|---|---|---|---|---|
| P-05 | P — Carter's "does not yet exist" statement re JustUs CPP | Full email thread (April 3, 2026) containing Carter's verbatim statement | Authenticates the Ex. P primary; FRE 801(d)(2) party admission. Carter's statement that "an organization that does not yet exist" cannot receive funding was directed at Plaintiff's nonprofit, JustUs CPP, as the stated reason for refusing partnership/funding. JustUs CPP had been IRS-determined as a 501(c)(3) public charity (EIN 92-1443921) effective December 23, 2022 — more than three years before Carter's April 3, 2026 statement. In an earlier email (March 2, 2026) in the same thread, Carter wrote: "Economic development support is evaluated in coordination with county leadership and regional economic development organizations" — a written admission that SEC's decisions are coordinated with Washington/Council and NESA, the same network in which Carter sits as WCDC Treasurer and a former NESA Director of Operations. Evidence of retaliatory and discriminatory denial through coordinated network, not independent judgment. | I, III, VII |
| P-06 | P — Carter's "does not yet exist" statement re JustUs CPP | JustUs CPP IRS 501(c)(3) Determination Letter (Oct. 6, 2023; effective Dec. 23, 2022; EIN 92-1443921) | **Facial falsity proof:** IRS public-record determination of JustUs CPP's federal tax-exempt status as a §170(b)(1)(A)(vi) public charity, in effect 3+ years before | I, III, VII |

| Sub-Exhibit | Parent Exhibit / Subject | Description | Evidentiary Purpose | Count(s) |
|---|---|---|---|---|
| | | | Carter's April 3, 2026 "does not yet exist" denial | |
| P-07 | P — Carter's "does not yet exist" statement re JustUs CPP | LISC Broadband Help Hub Technical Assistance Award to JustUs (Oct. 28, 2025) | **PRE-DATES Carter's denial by 5 months.** Local Initiatives Support Corporation (federally-funded national community development intermediary) formally AWARDED JustUs a technical assistance package and offered a project kick-off meeting. From Christa Vinson, Director, Digital Access & Strategic Partnerships, Rural LISC. Demonstrates JustUs CPP existed, was vetted, and was operationally engaged in federally-aligned broadband planning before Carter's denial. | I, III, VII |
| P-08 | P — Carter's "does not yet exist" statement re JustUs CPP | USDA Wholesale Markets & Facility Design Program — Project Number A2026MCADSC assigned to JustUs (May 13, 2026) | **Direct federal-agency engagement.** USDA Agricultural Marketing Service assigned a project number, opened a Box.com project folder, and assigned a three-architect team (Batcher, Pokrovskaya, Grant). Confirms JustUs CPP's standing as a USDA project recipient. | I, III, VII |
| P-09 | P — Carter's "does not yet exist" statement re JustUs CPP | NPS Youth Programs Division — JustUs FY26 Funding Selection (May 5, 2026) | **Direct federal-agency funding.** National Park Service Youth Programs Division SELECTED JustUs CPP for FY26 funding for youth and young adult internships, with annual-report deadlines of Sept. 14 / Oct. 5, 2026. From Ernestine White, National Youth Employment Program Coordinator, NPS. | I, III, VII |

| Sub-Exhibit | Parent Exhibit / Subject | Description | Evidentiary Purpose | Count(s) |
|---|---|---|---|---|
| P-10 | P — Carter's "does not yet exist" statement re JustUs CPP | SC Secretary of State Public Charity Registration Confirmation (March 1, 2024) — Charity Public ID **P82497** | **State-record corroboration.** SC Secretary of State Mark Hammond's Office, Division of Public Charities (Director Kimberly S. Wickersham), confirmed JustUs Community Perpetualization Project's registration in compliance with the South Carolina Solicitation of Charitable Funds Act, valid through May 15, 2025. Issued more than two years before Carter's April 3, 2026 denial. | I, III, VII |
| T-04 | T — Williamsburg zoning gap / PRET PFAS | Silicon Ranch Stockton solar litigation — 1819 News article | Background pattern of solar-developer treatment in SC (offered for notice / inquiry, not for truth) | III, IV |

# I-A. OPPORTUNITY-TO-CLARIFY NOTE

# (re: Sub-Exhibits P-02, P-03, P-05, P-06)

The Defendant network had multiple documented opportunities to clarify the public-record status and active partnership posture of JustUs Community Perpetualization Project, Inc., before Ronald D. Carter, Jr. issued his April 3, 2026 "does not yet exist" denial:

1. **IRS Public Record (P-06).** JustUs CPP held an IRS 501(c)(3) public-charity determination (§170(b)(1)(A)(vi), EIN 92-1443921) effective **December 23, 2022** — over three years before Carter's denial. The determination is searchable via the IRS Tax Exempt Organization Search (publicly accessible) and corroborated by annual Form 990 filings. **Plus contemporaneous federal engagement evidence:** (a) Sub-Exhibit **P-07** — LISC Broadband Help Hub awarded JustUs technical assistance on October 28, 2025, more than five months before Carter's denial; (b) Sub-Exhibit **P-08** — USDA assigned JustUs Project Number A2026MCADSC on May 13, 2026 with a three-architect team; (c) Sub-Exhibit **P-09** — NPS Youth Programs Division selected JustUs for FY26 funding on May 5, 2026. Multiple federal and federally-funded national bodies recognize and engage with JustUs CPP as a vetted, eligible, operating entity.

2. **Sept. 10, 2025 EDA $50M Partnership Email (Ex. H-04).** Plaintiff's partnership submission was served by email directly on Defendant Washington, County Clerk Tammi Epps-McClary, and Summer Baxley, with U.S. EDA Program Officer Helen Sherman cc'd. That email placed each named recipient on actual notice of JustUs CPP's existence, federal-agency engagement, and active partnership inquiry. Helen Sherman's involvement is itself a federal-agency confirmation that JustUs CPP exists and is eligible.

3. **WCDC Board Composition.** Carter served as WCDC Treasurer; Defendant Hixon Copp was a WCDC co-member. The October 20, 2025 WCDC Board minutes are within the case record. The WCDC board — the same body that received and processed JustUs CPP-related inquiries — included Carter himself as Treasurer.

4. **Carter's Written Coordination Admission.** Carter's earlier email in the same thread (March 2, 2026) stated: *"Economic development support is evaluated in coordination with county leadership and regional economic development organizations."* That admission confirms Carter consulted Washington/Council and NESA (Carter is a former NESA Director of Operations) before responding. Any of those coordinating parties could have corrected the factual record; none did.

5. **Ex. HH — Jan. 7, 2026 Notice of Intent + 14-Day Cure.** Eighty-six (86) days before Carter's denial, Plaintiff served formal notice on County actors with a 14-day cure period. No corrective communication issued.

**Legal effect.** Under *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970), §1985(3) concert-of-action may be proven by circumstantial evidence of coordinated denial. Under *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987), silence by policy-makers with knowledge and authority to correct supports a ratification theory of Monell liability. The uniform failure of the network — Washington, Copp, Shuler, the WCDC board including Carter as Treasurer, and the NESA-affiliated regional EDO — to correct Carter's facially false denial when each had the information and the channel to do so, supports an inference of agreement to the discriminatory denial, advancing Count VII (Civil Conspiracy), Count I (First Amendment Retaliation), and Count III (Equal Protection — class of one).

**Parallel-denial pattern (Ex. A-09).** The same template appears in Defendant Copp's March 13, 2026 written denial of the existence of "any lawsuit pertaining to INGKA Investments vs. Williamsburg County" (Ex. A-09), forwarded by the County Clerk and CC'd to the Shuler firm. As with the Carter denial, the Ingka-related litigation Copp denied awareness of is demonstrably on the public record (Ex. A-10 — Sunbelt Rentals mechanics lien against Kingstree West / Ingka, April 19, 2026). Two defendant-network actors, two written denials of facts on the public record, both delivered to Plaintiff, both with the same network in the loop, both within thirty days of each other (Copp: March 13, 2026; Carter: April 3, 2026). The parallel structure strengthens the §1985(3) concert-of-action inference and the SAC's specific allegation at the corresponding paragraph that "At no time has Council announced in open session any litigation by or against corporate entities including Ingka Group."

## II. AUTHENTICATION

Plaintiff has executed a Verification under 28 U.S.C. § 1746 attached to the Second Amended Complaint, expressly incorporating this Addendum and the supplemental sub-exhibits listed above. Sub-exhibits derived from public Secretary of State filings are self-authenticating under Fed. R. Evid. 902(4) (certified public records). Statements of party-opponents (Hixon Copp, Ronald Carter) are not hearsay under Fed. R. Evid. 801(d)(2).

## III. RELATIONSHIP TO MAY 9, 2026 EXHIBIT INDEX

This Addendum **supplements** the Exhibit Index filed May 9, 2026 (04_SAC_Exhibit_Index_FILED_2026-05-09.pdf) and the Corrected Exhibit Index dated May 11, 2026 (2026-05-11_SAC_Exhibit_Index_CORRECTED.md). No filed exhibit letter is renumbered, withdrawn, or substituted. Sub-exhibits A-06 through A-08, L-06 through L-11, N-03, P-02 through P-05, and T-04 are appended to their respective parent letters.

The Sept. 10, 2025 EDA $50,000,000 Partnership materials (Sub-Exhibits H-04, H-05, H-06) and the Sam L. Floyd dual-role materials (Sub-Exhibits L-04, L-05) — added before this Addendum — remain incorporated within Exhibits H and L respectively per the May 11 Corrected Index.

## IV. SUPPORTING-EVIDENCE FOLDERS (NOT FILED AS INDIVIDUAL EXHIBITS)

The following two folders contain corroborating authentication materials retained by Plaintiff and available for production on request. They are **not** filed as separate exhibits; they support and authenticate the sub-exhibits listed above:

1. **_Supporting_Evidence_Structural_Conflicts/** — eight documents tracking Sam L. Floyd's vote pattern as Council Vice Chair while simultaneously serving as Santee Electric Cooperative's board attorney. Documented dates: June 17, July 7, July 15, Aug. 11, **Aug. 19** (FILOT amendment for Santee Electric — direct conflict, no recusal noted), and Dec. 16, 2025. Confirmed in writing by Megan Blackburn, Santee Electric, March 30, 2026.
2. **_Supporting_Evidence_Hydrogen_Battery_Storage/** — seven BESS (Battery Energy Storage System) documents corroborating Exhibits B, C, and D. Documents the County's later execution of the hydrogen / battery uses contemplated in the March 1, 2023 Chikhliker → Frieson pre-execution email (Ex. D) without zoning review. Includes BESS Partial Waiver 2026-502 signed by Henry Poston.

## V. CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, a true and correct copy of the foregoing **Supplemental Exhibit Addendum to Second Amended Complaint** was served upon counsel for Defendants via the Court's CM/ECF system:

- Daniel C. Plyler and William K. Rees Smith Robinson Holler DuBose & Morgan, LLC 3200 Devine Street, Columbia, SC 29205
- Steve A. Matthews Haynsworth Sinkler Boyd, P.A. 1201 Main Street, 22nd Floor, Columbia, SC 29201

Respectfully submitted,

Dr. Lathonia Bennett, DDS
*Pro Se* Plaintiff
137 Broughton Avenue,
Andrews, SC 29510
P.O. Box 1010, Kingstree, SC 29556
lathonia@justuscpp.org

Dated:15th of May, 2026

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

## FLORENCE DIVISION

Lathonia Bennett, DDS, and JustUs Community Perpetualization Project, Inc., Plaintiffs,

v.

Williamsburg County; Williamsburg County Council; Kelvin Washington, County Supervisor, in his official and individual capacities; Hixon Copp, Director of Economic Development, in his official and individual capacities; Amanda Shuler, County Attorney, in her official and individual capacities; Williamsburg County Economic Development Board; Williamsburg County Development Corporation (WCDC), Defendants.

Civil Action No.: 4:26-cv-01034-JD-PJG

**PLAINTIFF'S NOTICE OF SUBMISSION OF TELECOM AND SPECIAL PURPOSE DISTRICT EXPERT AND POLICY EXHIBITS IN SUPPORT OF MOTION FOR STRUCTURAL INJUNCTIVE RELIEF AND PETITION FOR WRIT OF MANDAMUS**

**(EXHIBIT GROUP J — BROADBAND/TELECOM SPECIAL PURPOSE DISTRICT: EXPERT, POLICY, AND STATUTORY AUTHORITY)**

Plaintiff Lathonia Bennett, DDS, proceeding pro se, and on behalf of JustUs Community Perpetualization Project, Inc., respectfully submits this Notice to inform the Court and Defendants of **Exhibit Group J — Telecom and Special Purpose District Expert and Policy Evidence**, in further support of Plaintiff's pending Motion for Structural Injunctive Relief and Petition for Writ of Mandamus. These exhibits establish that Plaintiff's proposed Broadband/Telecom Special Purpose District and Recreation Special Purpose District are grounded in South Carolina statutory authority, nationally recognized policy frameworks, and documented community need.

## EXHIBIT GROUP J — TAB INDEX

| Tab | Exhibit | Description | Primary Use |
|-----|---------|-------------|-------------|
| J-1 | SC Code §§ 6-11-10 and 6-11-1610 | SC statutory authority for SPDs, including recreation expressly | SPD legal authority / Mandamus |
| J-2 | SC SOS Special Purpose Districts Registry | SOS filings and biennial directory confirming SPD formation process | SPD formation process / Mandamus |
| J-3 | SC H. 4993 (2019–2020): Local Government-Owned Broadband | SC bill authorizing local government-owned broadband ISPs in unserved areas | Broadband SPD / Mandamus |
| J-4 | ILSR/SRBWI: *Increased Wellness and Economic Return of Universal Broadband* (2023) | Peer-reviewed report: $43M/year return from universal broadband in Southern rural Black Belt counties | Irreparable harm / Public interest / TRO |
| J-5 | Christopher Mitchell, ILSR — Community Broadband Expert Publications | National expert on community broadband networks; 600+ networks tracked; peer-reviewed scholarship | Discretion vs. duty / Public interest |
| J-6 | U.S. Treasury CPF Fact Sheet — South Carolina ($185.1M) | Federal confirmation of SC broadband investment targeting unserved rural locations | Irreparable harm / Federal nexus |
| J-7 | Brookings Institution: *Maximizing New Federal Investments in Broadband for Rural America* (2023) | National policy scholarship on rural broadband governance and community partnership models | Public interest / SPD necessity |

## TAB J-1 — South Carolina Statutory Authority for Special Purpose Districts

### S.C. Code Ann. §§ 6-11-10 and 6-11-1610 (2024)

S.C. Code § 6-11-10 authorizes establishment of special purpose or public service districts for the protection of public health, including water, fire protection, sewer, and related functions. Section 6-11-1610 defines a "special purpose district" as any district created pursuant to general law providing "any local governmental power or function including, but not limited to, fire protection, sewerage treatment,

water or natural gas distribution, **recreation**." The definition expressly includes recreation as a recognized SPD function.

**Legal Relevance:** This exhibit provides the direct statutory basis for Plaintiff's proposed Recreation and Broadband Special Purpose Districts. The statute uses broad functional language and does not limit SPD purposes to an exhaustive list. Plaintiff's proposals are exercises of recognized governmental powers under existing South Carolina law. This exhibit directly answers Defendants' separation-of-powers argument: Plaintiff asks the Court to enforce access to a legally recognized mechanism — not to create new legislative authority.

## TAB J-2 — SC Secretary of State Special Purpose Districts Registry

**SC Secretary of State, Special Purpose Districts — Filing Requirements and Biennial Directory**

The SC Secretary of State maintains an official registry of special purpose districts filed pursuant to S.C. Code § 6-11-1610. SPDs must notify the SOS upon creation and biennially thereafter. The SOS publishes a Biennial Directory identifying all active SPDs in South Carolina.

**Legal Relevance:** SPD formation in South Carolina is a routine, publicly administered governmental process. Dozens of SPDs exist in communities comparable to Williamsburg County. Defendants' failure to facilitate or even respond to Plaintiff's SPD proposals is an exercise of unreasonable, unstructured discretion — not a legitimate legislative choice about whether to exercise an available governmental power.

## TAB J-3 — South Carolina H. 4993 (2019–2020): Local Government-Owned Broadband

**SC General Assembly, H. 4993, 123rd Session (2019–2020)**

SC House Bill 4993 would have authorized and regulated local government-owned broadband ISPs, removing service-area restrictions for historically unserved areas. It reflects the General Assembly's recognition that local governments have a legitimate role in broadband deployment for rural and underserved communities, and that existing restrictions were barriers to closing the digital divide.

**Legal Relevance:** H. 4993 documents the SC Legislature's recognition that local broadband authority is appropriate and desirable for unserved rural communities. Combined with SC Code §§ 58-9-2600–2670,

this establishes a legislative framework acknowledging that Williamsburg County residents have a recognized public interest in locally controlled broadband. Defendants' failure to act toward broadband access — while approving $36.5M in ARPA broadband funding through FTC — reflects a discretionary choice that systematically disadvantages the county's most underserved residents.

## TAB J-4 — ILSR/SRBWI: Increased Wellness and Economic Return of Universal Broadband Infrastructure (2023)

**Authors: Ry Marcattilio, ILSR; co-published with Southern Rural Black Women's Initiative (SRBWI)**

This peer-reviewed policy report documents that universal, affordable broadband infrastructure would return **$43 million per year** in avoided healthcare costs across ten Southern rural Black Belt counties. The report focuses on chronic health conditions prevalent in rural Black communities — diabetes, chronic respiratory illness, cardiovascular disease — and models telehealth access as a primary benefit. It concludes that electric cooperatives and community-controlled networks offer "better and more locally accountable paths to universal, affordable service" than monopolistic incumbents.

**Legal Relevance:** This report is directly relevant to Williamsburg County on four grounds:

1. **Geographic and demographic mirror:** Williamsburg County is a predominantly Black, rural South Carolina county with the same chronic health burden profile, broadband-desert conditions, and monopolistic incumbent ISP dynamics the report analyzes.

2. **Irreparable harm predicate:** The $43M annual healthcare cost imposed on rural Black communities without broadband access is documented and quantified. Every year of denial is a year of compounding, irreparable harm.

3. **FTC conflict:** FTC received $36.5M in SC ARPA broadband grants for Williamsburg County while blocking JustUs CPP's workforce and broadband proposals — the exact monopolistic incumbent behavior this report identifies as the primary barrier to equitable access.

4. **Public interest prong:** For Plaintiff's TRO and Structural Injunctive Relief, the quantified community health benefit of broadband access powerfully supports the public interest element of the injunction standard.

## TAB J-5 — Christopher Mitchell, ILSR: Community Broadband Expert Publications

**Christopher Mitchell, Director, Community Broadband Networks Initiative, Institute for Local Self-Reliance**

Christopher Mitchell is the Director of ILSR's Community Broadband Networks Initiative, founder of CommunityNets.org (tracking 600+ community broadband networks nationally), and a nationally recognized expert on community broadband, municipal ISPs, and local broadband policy. His publications include *Municipal Broadband: Demystifying Wireless and Fiber-Optic Options* (2008), policy analyses published in the Federal Communications Law Journal (Vol. 73.1), and numerous ILSR reports on community network governance. He has presented at federal agency broadband forums including Appalachian Regional Commission Broadband Bootcamps.

**Legal Relevance:** Mitchell's expert work establishes:

- Community-controlled broadband networks are a proven model with 600+ operational examples nationwide, including electric cooperative-owned networks comparable to Santee Electric's territory.

- Locally accountable networks consistently provide greater transparency and community responsiveness than monopolistic incumbents.

- FTC's ARPA grant capture and parallel refusal to partner with community organizations mirrors the monopolistic incumbent behavior Mitchell identifies as the primary obstacle to equitable rural broadband access.

This tab also serves as a foundation for a Daubert qualification showing if Mitchell is retained as a testifying expert, given his peer-reviewed publication record and recognition by federal agencies and the Federal Communications Law Journal.

## TAB J-6 — U.S. Treasury Capital Projects Fund Fact Sheet: South Carolina ($185.1M)

**U.S. Department of the Treasury, CPF Award Fact Sheet — South Carolina (March 2023)**

The U.S. Treasury approved South Carolina's plan to invest $185.1 million in broadband infrastructure to serve an estimated 31,650 locations lacking adequate broadband access, with target speeds of 100/100 Mbps symmetrical. Participating ISPs were required to enroll in the FCC's Affordable Connectivity Program ($30/month subsidy for low-income families).

**Legal Relevance:** This exhibit establishes federal confirmation that Williamsburg County's region is recognized as broadband-deficient, federal funds are earmarked for exactly these communities, and the decision of whether those funds reach the most underserved residents — or are captured by a monopolistic incumbent already embedded in county governance — is a structural governance question. This exhibit supports Plaintiff's argument that the ARPA/CPF broadband funding flowing through FTC, with Mark Brown on both FTC leadership and the WCDC board, represents precisely the infrastructure capture that a Broadband SPD with independent governance would prevent.

### TAB J-7 — Brookings Institution: Maximizing New Federal Investments in Broadband for Rural America (2023)

**Brookings Institution Research Team**

This Brookings Institution report examines how rural communities can maximize the impact of new federal broadband investments (ARPA, CPF, BEAD), analyzing governance structures, local capacity building, and community partnership models. The report draws on practitioner and expert interviews on community broadband deployment and rural infrastructure governance.

**Legal Relevance:** The Brookings Institution is among the most authoritative and non-partisan policy research organizations in the United States. Its endorsement of community-capacity-building approaches to rural broadband deployment directly supports Plaintiff's argument that JustUs CPP's workforce development and broadband partnership proposals were consistent with recognized federal policy objectives. The report also supports the public interest finding for Plaintiff's TRO by establishing that the national policy consensus favors inclusive, community-engaged broadband governance models.

## ARGUMENT: DISCRETION VS. DUTY — BROADBAND AND RECREATION SPDs

The materials in Exhibit Group J establish that Plaintiff's proposed Special Purpose Districts are grounded in:

1. Existing South Carolina statutory authority (Tabs J-1, J-2, J-3) — not requests for the Court to create new law;

2. **Nationally documented, quantified community need** (Tabs J-4, J-6, J-7) — with irreparable, ongoing harm from continued inaction;

3. **Expert-supported governance models** (Tab J-5) — showing community-controlled infrastructure outperforms monopolistic incumbents in accountability and equity; and

4. **Federal policy alignment** (Tabs J-6, J-7) — confirming that the infrastructure investments Plaintiff seeks are exactly what federal broadband programs are designed to support.

Defendants' refusal to engage with or facilitate SPD formation for recreation or broadband — while approving large-scale industrial and solar projects through the interlocked network — is not a protected exercise of high-level policy discretion. It is an arbitrary, discriminatory denial of access to a legally available governmental mechanism, in violation of equal protection, procedural due process, and the specific duties created by South Carolina's Home Rule Act, FOIA, and ethics statutes. The quantified harm documented in Exhibit Group J satisfies the irreparable harm and public interest prongs of the preliminary injunction standard.

Plaintiff respectfully requests that the Court consider Exhibit Group J in full in ruling on her pending motions.

Respectfully submitted this 26th day of April, 2026.

Lathonia Bennett, DDS

Plaintiff, Pro Se

JustUs Community Perpetualization Project, Inc.

P.O. Box 1010

Kingstree, South Carolina 29556

Telephone: (843) 800-0087

Email: lathonia@justuscpp.org

## CERTIFICATE OF SERVICE

I hereby certify that on April 26th, 2026, I served a true and correct copy of the foregoing **Plaintiff's Notice of Submission of Telecom and Special Purpose District Expert and Policy Exhibits (Exhibit**

Group J) on counsel of record for Defendants by electronic mail and United States Mail, first-class postage prepaid, as follows:

Daniel C. Plyler, Esq.

William K. Rees, Esq.

Smith Robinson Holler DuBose Morgan, LLC

3200 Devine Street

Columbia, South Carolina 29205

Daniel.Plyler@SmithRobinsonLaw.com

William.Rees@SmithRobinsonLaw.com

*Counsel for Defendants Williamsburg County, Williamsburg County Council, Kelvin Washington, Hixon Copp, and Williamsburg County Economic Development Board*

Steve A. Matthews, Esq.

Haynsworth Sinkler Boyd, P.A.

1201 Main Street, 22nd Floor

Columbia, South Carolina 29201

smatthews@hsblawfirm.com

*Counsel for Defendants Amanda Shuler and Williamsburg County Development Corporation*

Lathonia Bennett, DDS

Plaintiff, Pro Se