**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| Lathonia Bennett,<br><br>Plaintiff,<br><br>v.<br><br>Williamsburg County; Williamsburg County Council; Kelvin Washington; Hixon Copp; Amanda Shuler; Williamsburg County Economic Development Board; and Williamsburg County Development Corporation,<br><br>Defendants. | C/A No.: 4:26-cv-01034-JD<br><br>**ORDER AND OPINION** |

This matter is before the Court on the Order and Report and Recommendation ("Report") of United States Magistrate Judge Paige J. Gossett (DE 177), recommending that Defendants' motions to dismiss Plaintiff Lathonia Bennett's First Amended Complaint (DE 45, 47) be granted, that the remaining South Carolina Freedom of Information Act claim be remanded, and that Plaintiff's requests for preliminary and mandamus relief be denied. The same filing also disposes of several nondispositive motions and grants the County Defendants' request for attorney's-fees sanctions. Plaintiff, proceeding pro se, filed objections (DE 181); Defendants responded (DE 183, 184). Also requiring disposition are Plaintiff's objections to the denial of leave to amend (DE 136), her motion concerning supplemental exhibits (DE 182), and related filings.

For the reasons below, the Court **ADOPTS AS MODIFIED** the Report's dispositive recommendations, **OVERRULES** the merits objections, but **SETS**

**ASIDE** the portion of DE 177 imposing monetary sanctions. The action will be remanded as to the surviving state-law FOIA claim.

## I. BACKGROUND

Plaintiff commenced this case in the Williamsburg County Court of Common Pleas, and Defendants removed it to this Court. The operative First Amended Complaint (DE 18) describes Plaintiff as the founder and operator of Just Us CPP, a nonprofit community-development organization. She alleges that she advocated for transparency, zoning procedures, economic opportunity, and citizen participation before the Williamsburg County Council. (DE 18 ¶¶ 12–16.) In September 2025, she asked the Council to establish an advisory board. In January and February 2026, she sought consideration of five resolutions, including a board of zoning appeals, special-purpose districts, and a proposed partnership involving Just Us CPP. She alleges that the resolutions appeared on the February 17 agenda but received no recorded motion, vote, or other legislative disposition. (*Id.* ¶¶ 14–20.)

Plaintiff contrasts that inaction with the Council's processing of commercial projects, including the Ingka Solar project, Project Aspire, and Project Slipshot. (*Id.* ¶¶ 22–25, 48.) She also alleges that, after she initiated litigation, Council officials publicly announced her lawsuit at a March 2, 2026, meeting, unlike how she claims other litigation was handled. She characterizes the announcement as intended to injure her reputation and chill further advocacy. (*Id.* ¶¶ 26–28, 36, 49.) Finally, she alleges that Defendants delayed or conditioned responses to requests for public records, including requests concerning economic-development agreements and the South Carolina Freedom of Information Act ("SCFOIA"). (*Id.* ¶¶ 29–32, 59–61.) These

are allegations accepted as true for the purpose of the motions to dismiss, not factual findings.

The First Amended Complaint asserts First Amendment retaliation (Count I), interference with the right to petition (Count II), equal protection (Count III), due process (Count IV), declaratory and mandamus relief (Count V), SCFOIA (Count VI), and state-law tortious interference and civil conspiracy (Count VII). (DE 18 ¶¶ 37–63.) Plaintiff alleges losses to Just Us CPP and its initiatives, but also injury to her own reputation and protected advocacy. (*Id.* ¶¶ 26–27, 36, 40.) The County Defendants moved to dismiss all claims other than the state SCFOIA claim (DE 45); Shuler and the Williamsburg County Development Corporation ("WCDC") moved to dismiss the claims against them (DE 47). The Report recommended granting those motions. (DE 177 at 13, 18.)

The amendment history matters to the objections. On May 1, 2026, the Magistrate Judge directed Plaintiff to submit a proper motion to amend, a complete proposed pleading, and its exhibits together by May 15, warning against piecemeal submissions. (DE 78 at 1–2.) Plaintiff attempted to submit a proposed pleading docketed on May 18 (DE 87), with exhibits docketed separately (DE 93). The Magistrate Judge struck those submissions on May 20 because the pleading was not accompanied by a proper motion and the required materials were not presented together. (DE 94.) Plaintiff submitted a consolidated motion on June 1 (DE 111), and the Magistrate Judge denied it on June 9 after finding no adequate explanation for why the amendment could not have been presented in compliance with the May 15 deadline. (DE 119.) Plaintiff objected (DE 136).

A separate dispute concerns sanctions. On May 18, Plaintiff filed a third motion for temporary and preliminary injunctive relief (DE 89). Defendants filed a combined response and motion for sanctions on June 1 (DE 100). Plaintiff opposed sanctions and voluntarily withdrew DE 89 on June 8 (DE 121, 123). The Report's operative order nevertheless granted DE 100, found other filings improper, and directed Plaintiff to reimburse defense counsel for expenses responding to DE 106, 132, 139, 155, and 162, with the amount to be set following affidavits. (DE 177 at 16–17.) Defendants filed fee affidavits (DE 185, 188, 189); Plaintiff challenged the sanctions procedure in Objection 10. (DE 181 at 9–10.)

## II. STANDARD OF REVIEW

A magistrate judge's recommended disposition carries no presumptive weight; the district judge makes the final determination. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), the Court reviews de novo portions of the Report to which specific objections are made and may accept, reject, or modify the recommendations. Unobjected-to portions are reviewed for clear error. *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Because Plaintiff proceeds pro se, her objections receive liberal construction and "need not be novel to be sufficiently specific." *Elijah v. Dunbar*, 66 F.4th 454, 460–61 (4th Cir. 2023).

A different review standard governs the Magistrate Judge's operative rulings. Rule 72(a) requires the Court to consider timely objections to nondispositive orders and to "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *Wall v. Rasnick*, 42 F.4th 214, 220–21 (4th Cir. 2022).

The Court applies that standard to the denial of leave to amend and the non-dispositive sanctions and case-management rulings. The Court separately analyzes the authority for a fee-shifting sanction; the fact that fees have not yet been quantified does not excuse review of whether the sanction was authorized.

Rule 12(b)(6) requires plausible factual allegations, not legal conclusions or a formulaic recitation of elements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Well-pleaded facts and reasonable inferences are accepted in Plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction does not permit the Court to supply essential facts or legal theories missing from the complaint. *Weller v. Dep't of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). Allegations first presented in an opposition memorandum or an unaccepted proposed amendment do not replace the operative pleading. *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

## III. DISCUSSION

### A. Amendment and the Operative Record (DE 136; Objections 1–2)

Plaintiff's first two objections assert that the Report accepted Defendants' arguments without sufficient independent analysis and improperly disregarded materials associated with her proposed Second Amended Complaint while objections to the denial of leave remained pending. (DE 181 at 3–4.) The Report correctly identified DE 18 as the operative pleading because the Magistrate Judge denied leave to file another amendment. (DE 177 at 12–13 & n.3.) To remove any possible doubt about that premise, the Court addresses DE 136 first.

The May 1 order was explicit: Plaintiff had to file the motion for leave, proposed amended complaint, and exhibits together by May 15. (DE 78 at 1–2.) The May 20 text order did not find the materials untimely; it struck DE 87 and DE 93 because Plaintiff did not file the required motion and did not tender the documents together. (DE 94.) Plaintiff correctly emphasizes this distinction and states that the proposed pleading was mailed on May 12, before the deadline. (DE 136 at 2–4.) The Court accepts that assertion for purposes of reviewing the objection. But mailing a proposed complaint without the required motion, followed by separately submitted exhibits, did not comply with the order's unambiguous requirements.

Plaintiff cured those formal defects when she submitted DE 111 on June 1, but by then the Court-imposed deadline had expired. Although Rule 15(a)(2) generally favors amendment, an expired amendment deadline implicates the good-cause requirement of Rule 16(b)(4) when established by a scheduling order and, on a request to extend an expired court-ordered time limit, Rule 6(b)(1)(B)'s excusable-neglect requirement. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Pioneer Investment Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993). The latter inquiry considers prejudice, the delay's length and impact, the reasons for the lapse—including what lay within the movant's control—and good faith. *See Pioneer*, 507 U.S. at 395.

The short delay, Plaintiff's pro se status, and her prompt attempt to correct DE 94 weigh in her favor, and the Court makes no finding of bad faith in seeking amendment. But the reason for the failure weighs more heavily here: the motion required by DE 78 was entirely within Plaintiff's control and had been specifically

identified in advance. DE 111 did not explain why Plaintiff could not have assembled and tendered the complete motion and supporting materials together before May 15. (DE 111; DE 119.) The Magistrate Judge's conclusion that Plaintiff failed to justify an extension was neither clearly erroneous nor contrary to law. (DE 119.) The Court, therefore, **OVERRULES** DE 136 and **AFFIRMS** DE 119. That ruling addresses compliance with the amendment procedure; it does not find the excluded documents fictitious or resolve their historical accuracy. Plaintiff's related motion for leave to file a further reply out of time (DE 172) is **DENIED AS MOOT** in light of this review.

The Court has nevertheless undertaken the independent, claim-specific review that Objection 1 requests. The Magistrate Judge's use of Defendants' arguments in the Report (DE 177 at 5–13) does not substitute for this Court's independent determination. Objections 1 and 2 are overruled insofar as they seek consideration of an unaccepted second amended pleading as operative, but the Court addresses their substantive concerns in the analysis below.

### B. Federal Claims and Defendant-Specific Objections (Objections 3–7)

#### 1. Plaintiff's individual interests and Just Us CPP.

Defendants argue that Plaintiff asserts generalized grievances and injuries belonging to Just Us CPP. (DE 45 at 5–8; DE 47 at 14–16.) The Report recounts those arguments. (DE 177 at 5–6, 10–11.) The distinction is real but must be applied carefully. Plaintiff may not represent a separate organization as a pro se litigant, and an injury suffered only by Just Us CPP does not become her own merely because she founded or operates it. *See Rowland v. California Men's Colony*, 506 U.S. 194, 201–02 (1993); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74 (1992). To the extent

that the requested relief addresses only lost projects, partnerships, or resources belonging to Just Us CPP, Plaintiff cannot litigate the nonprofit's claims in her individual capacity. (DE 18 ¶¶ 16, 36, 40, 63.)

That conclusion does not dispose of all claims. Plaintiff separately alleges that announcing her lawsuit publicly damaged her personal reputation and chilled her speech. (*Id.* ¶¶ 26–27, 36, 40.) The Court assumes a sufficiently personal asserted injury for purposes of examining those constitutional theories on their elements. It does not dismiss them categorically for lack of standing, nor does it treat every complaint about local legislative action as a nonjusticiable political question. *Baker v. Carr*, 369 U.S. 186, 217 (1962), does not immunize local officials from review of adequately pleaded federal constitutional violations. The dispositive question here is whether Plaintiff has alleged such violations.

**2. First Amendment retaliation (Count I).**

Plaintiff alleges protected advocacy before the County Council and the filing of litigation. Those activities ordinarily fall within the First Amendment's protection. (DE 18 ¶¶ 13, 26, 38–40.) She contends that Council officials retaliated by declining to act on resolutions, publicly mentioning her lawsuit, obstructing public-records requests, and denying economic-development resources to Just Us CPP. (*Id.* ¶ 40.) A retaliation claim requires protected activity, action that adversely affected protected speech, and causation. *See Constantine v. Rectors & Visitors of George Mason University*, 411 F.3d 474, 499–500 (4th Cir. 2005); *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 685–86 (4th Cir. 2000).

Plaintiff's allegation of a personal reputational or chilling injury cannot be ignored. (DE 181 at 5–7.) Yet the specific governmental speech alleged was an announcement that Plaintiff had filed an action against the County. (DE 18 ¶¶ 26–27.) The pleading identifies no threat, coercive warning, promised penalty, or imminent regulatory consequence accompanying that announcement. When the asserted official retaliation consists of speech, *Suarez* ordinarily requires a "threat, coercion, or intimidation" intimating punishment or adverse governmental action; even disparaging official speech does not by itself meet that standard. 202 F.3d at 687–88. Plaintiff pleads that the announcement was unusual and motivated by hostility, but the alleged motive does not substitute for actionable adverse conduct. Nor does the County's failure to act on her proposals supply the missing adverse action merely because her advocacy preceded that inaction. The alleged denials of resources to Just Us CPP principally describe organizational, not personal, loss; and the records allegations concern disputes over SCFOIA procedures rather than a sufficiently identified retaliatory act against Plaintiff's own speech. (DE 18 ¶¶ 19–20, 29–31, 36, 40.) Accordingly, Count I fails to state a plausible individual retaliation claim.

**3. Right to petition (Count II).**

Plaintiff's resolutions were submitted and appeared on the Council agenda, but she alleges that no motion or recorded vote followed. (DE 18 ¶¶ 16, 19–20, 43–45.) The right to petition protects the ability to address the government; it does not require officials to provide the response or legislative action the petitioner seeks. The Supreme Court has held that the First Amendment does not impose an "affirmative

obligation on the government to listen [or] to respond[.]" *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 465 (1979) (per curiam); *see also Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271, 285–87 (1984). The facts alleged do not show that Plaintiff was prevented from speaking or submitting her proposals. Count II, therefore, fails regardless of whether Council procedures or comparative treatment could be challenged under other law.

**4. Equal protection (Count III).**

Contrary to a broad suggestion that Plaintiff identified no comparators, the First Amended Complaint names Ingka Solar, Project Aspire, and Project Slipshot. (DE 18 ¶¶ 22–25, 48–49.) The Court has considered those specific allegations, including Plaintiff's contention that the projects obtained ordinance numbers, readings, and votes while her resolutions received no disposition. But identification alone does not establish that corporate development ordinances and citizen- or nonprofit-sponsored governance resolutions were similarly situated in matters relevant to Council processing, nor does the pleading supply nonconclusory facts showing discriminatory animus or the absence of a rational reason for different treatment. *See SAS Associates 1, LLC v. City Council for City of Chesapeake*, 91 F.4th 715, 720 (4th Cir. 2024); *Tri County Paving, Inc. v. Ashe County*, 281 F.3d 430, 440 (4th Cir. 2002). Plaintiff's distinct public announcement of the litigation is also insufficient: she identifies other matters allegedly discussed differently, but not materially comparable circumstances establishing purposeful, unconstitutional discrimination. (DE 18 ¶¶ 26, 49.) Count III thus fails as pleaded.

**5. Due process (Count IV).**

Plaintiff identifies asserted interests in receiving economic-development opportunities, formal legislative action on her proposals, access to government processes, a board of zoning appeals, and receipt of public records. (DE 18 ¶¶ 33–34, 52–54.) Procedural due process requires an existing liberty or property interest protected by law; an abstract desire or unilateral expectation is insufficient. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Plaintiff identifies no rule that gives her an individual entitlement to approval of proposals, a particular economic-development award, or a formal vote. The cited South Carolina zoning provision says an ordinance "may provide for the creation" of a board of zoning appeals; it does not compel creation of the board at Plaintiff's request. S.C. Code Ann. § 6-29-780(A). Nor does disagreement over an SCFOIA response, without more, create a federal procedural due process violation or an independent constitutional entitlement to government records. *See McBurney v. Young*, 569 U.S. 221, 232 (2013); *Fusaro v. Cogan*, 930 F.3d 241, 249 (4th Cir. 2019). Count IV, therefore, fails to allege deprivation of a protected interest.

The Fourth Circuit's recent decision in *Deal v. City of Monroe*, 181 F.4th 378, 381–83 (4th Cir. 2026), reinforces the distinction between a hoped-for governmental benefit and an enforceable entitlement. There, the court found no protected property interest even in a seat already held on a municipal board of adjustment where local law preserved governmental discretion over the board. *Id.* at 382–83. Here, Plaintiff alleges no appointment or vested benefit at all; she seeks creation of a board and affirmative legislative treatment of her proposals, matters the cited South Carolina

statute leaves to local discretion. *Deal* involved North Carolina law and an incumbent board member, so it does not govern construction of § 6-29-780(A), but its property-interest analysis supports the conclusion that Plaintiff has not pleaded a legitimate individual entitlement.

**6. Defendants and requested mandamus relief (Count V).**

Plaintiff alleges that Shuler advised the County concerning governance matters and public-record requests. (DE 18 ¶¶ 6, 30, 35.) Even assuming Shuler acted under color of state law in these circumstances alleged, Plaintiff does not identify a specific act by Shuler that plausibly violated a federal constitutional right. State-law protections applicable to attorneys representing clients may bear on state-law theories, but they are not independently dispositive of a federal § 1983 claim. Likewise, the allegations that WCDC participated in development programs and may have operated with public support or authority (*id.* ¶¶ 8, 32) do not identify WCDC's own actionable conduct violating a federal right. Defendants Shuler and WCDC correctly object that labels such as "arm" of the government do not supply the missing conduct. (DE 47 at 16–19; DE 184 at 1–3.) The Court reaches that conclusion without deciding a disputed agency relationship or assuming the complaint alleges no facts at all concerning WCDC.

Washington and Copp are named in their official capacities; to the extent that Plaintiff seeks § 1983 relief for those official actions, the claims are treated as claims against the County itself. *See Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000). An allegation of a County policy or custom under *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978), does not cure the absence of an underlying constitutional

deprivation. (DE 18 ¶ 35.) Count V, which seeks declaratory relief and a judicial directive compelling Council action, identifies no clear ministerial duty to vote on or enact Plaintiff's proposals. *See City of Rock Hill v. Thompson*, 349 S.C. 197, 199, 563 S.E.2d 101, 102 (2002). Nor does the federal mandamus statute generally empower a district court to command local elected officials to undertake discretionary legislative actions. *See* 28 U.S.C. § 1361 (addressing federal officers and employees). Absent a viable underlying federal claim or definite mandatory duty, Count V affords no separate basis for relief. The objections seeking individualized review of Shuler and WCDC (DE 181 at 7) have, therefore, been considered but do not change the outcome.

**7. State-law tortious interference and civil conspiracy (Count VII).**

Count VII asserts state-law claims for tortious interference with business and nonprofit relations and civil conspiracy. (DE 18 ¶¶ 62–63.) Plaintiff alleges that Defendants engaged in coordinated conduct that obstructed access to economic-development programs, impeded Just Us CPP's community initiatives, and retaliated against her protected advocacy. Although Plaintiff characterizes these actions as tortious interference and conspiracy, the allegations do not plausibly establish the elements of either cause of action under South Carolina law.

South Carolina distinguishes tortious interference with an existing contract from intentional interference with prospective contractual relations. The former requires, among other elements, an existing contract and the intentional procurement of its breach. The latter requires intentional interference with prospective contractual relations, undertaken for an improper purpose or by improper methods, resulting in injury. *See Eldeco, Inc. v. Charleston Cnty. Sch. Dist.*, 372 S.C.

470, 480–82, 642 S.E.2d 726, 731–32 (2007). Here, Plaintiff identifies no existing contract belonging to her that Defendants intentionally caused a third party to breach. Nor does she identify a sufficiently concrete prospective business relationship of her own with which Defendants intentionally interfered through improper purpose or methods. Her allegations principally concern the County's treatment of governmental proposals and asserted economic opportunities belonging to Just Us CPP, rather than interference with an identifiable contractual or prospective business relationship belonging to Plaintiff individually. (DE 18 ¶¶ 16, 25, 36, 63.)

Plaintiff's civil conspiracy theory is likewise insufficiently pleaded. Under South Carolina law, a civil conspiracy requires "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 575, 861 S.E.2d 774, 780 (2021). Although Plaintiff alleges several actions by County officials and characterizes their conduct as coordinated, she does not plead facts supporting a plausible inference that Defendants entered an agreement to accomplish an unlawful objective or employed unlawful means pursuant to a common scheme that proximately injured her individually. (DE 18 ¶¶ 26–31, 36, 63.) The Court does not require Plaintiff to plead special damages distinct from those sought under her other causes of action; *Paradis* expressly rejected that requirement. 433 S.C. at 574–75, 861 S.E.2d at 779–80. Rather, the deficiency lies in the absence of factual allegations plausibly establishing the requisite agreement,

unlawful objective or means, and resulting injury attributable to the alleged conspiracy.

Accordingly, Count VII fails to state a plausible claim for relief under either state-law theory. Having considered the parties' briefing and the limited nature of the issues presented, the Court exercises supplemental jurisdiction to resolve these pleaded tort claims under Rule 12(b)(6). This determination does not address the merits of Plaintiff's separately pleaded SCFOIA claim, over which the Court declines to retain supplemental jurisdiction.

The Court, therefore, agrees with the Report's recommended dismissal of Counts I–V and VII, but rests its disposition on the foregoing independent, claim-specific analysis rather than categorically rejecting Plaintiff's individual standing or treating the controversy as nonjusticiable merely because it involves County legislative action. Objections 3–7 are **OVERRULED** insofar as they seek a different disposition. The Court has nevertheless considered Plaintiff's contention that her individual allegations must be distinguished from injuries asserted on behalf of Just Us CPP.

### C. Supplemental Materials and the Related Objections (DE 182; Objections 8–9)

Plaintiff asks to resubmit supplemental exhibits associated with her First Amended Complaint in connection with the objections. (DE 182.) The Court does not equate procedural exclusion with a finding that a document never existed. But material not attached to or properly incorporated into DE 18 cannot simply become part of the operative pleading through the objections or a later evidentiary submission. *See Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016);

*Southern Walk*, 713 F.3d at 184. The Court has considered the parties' arguments concerning the nature of the proffer, but the proffer does not alter the constitutional elements identified above. DE 182 is **DENIED**. The Court expresses no view concerning the authenticity or ultimate admissibility of documents not necessary to resolve the pleadings.

Objections 8 and 9 also assert that the sanctions ruling improperly characterized exhibits associated with Plaintiff's proposed Second Amended Complaint as nonexistent. (DE 181 at 8–9.) The Report's sanctions discussion, however, identifies placeholders and referenced exhibits in DE 89, the third injunction motion—not merely the materials tendered with the proposed amended pleading. (DE 177 at 16; DE 89.) Defendants correctly distinguish those sets of materials. (DE 184 at 2–3.) Plaintiff herself characterizes DE 89 as a mistakenly filed, unfinished AI-assisted draft. (DE 121; DE 123 at 2–6.) The Court need not determine whether proposed pleading exhibits existed to decide the sanctions objection. The legal grounds for setting aside the monetary sanction are addressed separately below.

**D. Ancillary Rulings and Requests for Preliminary Relief (Objections 11–13)**

The Report's operative order disposed of Plaintiff's motions concerning preservation, discovery, extensions, sur-reply practice, redaction, and in camera review. (DE 177 at 14–17.) Plaintiff argues that seeking reconsideration of a discovery stay is not itself evidence of improper purpose and that preservation of relevant evidence is analytically distinct from whether merits discovery is stayed. (DE 181 at 10–11.) The Court agrees with those distinctions as legal propositions. A discovery

stay does not extinguish an otherwise existing preservation obligation, and denial of a discovery motion does not, without more, establish misconduct.

Even so, the challenged rulings did not authorize destruction of evidence or adjudicate a proved spoliation claim. The motions identified no sufficiently concrete basis for the sweeping preservation, compelled production, or in camera relief requested on the record then before the Magistrate Judge, particularly while the motions to dismiss and discovery stay remained pending. (DE 44; DE 139; DE 162; see DE 177 at 15–16.) The Court, therefore, does not disturb those denials, but it does not adopt a categorical inference of improper motive from their filing. To the extent that the Report used those denials as independent support for fee sanctions, the Court declines to adopt that rationale for the reasons in Section III.E.

The Report also recommended denying Plaintiff's requests for injunctive and mandamus relief (DE 7, 83), principally because the dismissal recommendations defeat a showing of likely success on the merits. (DE 177 at 15, 18.) Preliminary injunctive relief requires, among other things, a clear showing of likelihood of success. *See Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Court independently concludes that the operative federal allegations do not support a cognizable basis for that extraordinary relief and that the proposed mandatory intervention in Council proceedings has not been justified. The requests (DE 7, 83) are, therefore, **DENIED**. Objections 11–13 do not warrant different treatment of these rulings.

## E. Rule 11 Sanctions and Plaintiff's Objection 10

The sanctions issue requires a different result. Although the Court shares the Magistrate Judge's concern about unchecked, unfinished, and repetitive filings, the sanction must rest on an authorized procedure. The Report's order granted Defendants' sanctions request (DE 100) and directed Plaintiff to pay the expense of opposing DE 106, 132, 139, 155, and 162, and also addressed DE 89. (DE 177 at 16–17.) The Court treats that operative, not yet quantified, fee-shifting ruling as a nondispositive pretrial order reviewable under Rule 72(a); it would independently reach the same conclusion that the present fee award cannot stand even under a more searching review.

Rule 11(c)(2) provides that a party's sanctions motion "must be made separately from any other motion" and ordinarily must be served at least twenty-one days before filing, to permit withdrawal or correction. Here, DE 100 is captioned as both an opposition to Plaintiff's third injunction motion and a sanctions motion. (DE 100 at 1–3.) The Clerk's separate docket description cannot change the contents of the filed paper. The challenged DE 89 was filed May 18; DE 100 was filed June 1, only fourteen days later; and Plaintiff voluntarily withdrew DE 89 on June 8. (DE 89; DE 100; DE 121.) The record identifies no separate sanctions motion served twenty-one days before filing or a comparable opportunity to withdraw the challenged document before the motion was presented to the Court.

The Fourth Circuit holds that Rule 11's safe-harbor provisions are "inflexible claim-processing rules" and that sanctions requested through a procedurally defective motion exceed the authority provided by that mechanism. *Brickwood*

*Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 395–96 (4th Cir. 2004) (en banc). The Court recognizes an important qualification: those requirements are not jurisdictional and may be forfeited if not timely asserted. *See id.* at 396. Plaintiff's opposition to sanctions (DE 123) argued inadvertence, correction, and lack of improper purpose but did not specifically raise the separate-motion or safe-harbor defect. She raised those defects expressly in Objection 10, filed within the period for challenging DE 177. (DE 181 at 9–10.)

The Court does not treat forfeiture as impossible, or Plaintiff's tardiness in identifying the defect as immaterial. Rather, exercising its discretion to consider a legal defect apparent on the face of the record before final judgment, the Court concludes that it should correct the defect here. *Brickwood* itself recognized that an unpreserved safe-harbor error may warrant correction when leaving it undisturbed would undermine the procedural purposes of Rule 11. 369 F.3d at 396–98. The defect is not a disputed evidentiary matter: the combined title and structure of DE 100 establish the separate-motion problem, and the known dates and absence of demonstrated advance service do not establish the safe harbor. Plaintiff withdrew DE 89 shortly after filing the sanctions request, precisely the type of corrective action the rule's procedure is designed to allow. The substantial, not-yet-quantified fee award, reaching filings beyond those identified in DE 100, makes the omission especially consequential. The Court, therefore, reaches the issue notwithstanding Plaintiff's failure to identify it in DE 123, without holding that an untimely Rule 11 objection can never be forfeited.

The extension to DE 106, 132, 139, 155, and 162 presents an additional problem. Those filings were not the identified subject of the June 1 party motion; several postdated it. (DE 100 at 2–3; DE 177 at 16–17.) Plaintiff did not receive the distinct notice and opportunity to withdraw each allegedly sanctionable filing contemplated by Rule 11(c)(2). One motion also sought discovery relief, to which Rule 11 does not extend when it constitutes a motion under Rules 26 through 37. Fed. R. Civ. P. 11(d). The Report's general reliance on Defendants' responses and the prior AI warning (DE 77) does not supply the missing procedural foundation for shifting the expense of all these motions.

The Court has considered whether another sanctioning mechanism supports this same monetary award. Rule 11(c)(3) authorizes the Court, on its own initiative, to issue a specific show-cause order, but DE 77's general warning was not an order directing Plaintiff to show cause why particular identified conduct violated Rule 11(b). Moreover, the fee payment to the opposing party contemplated by Rule 11(c)(4) depends on a motion and the associated requirements. An inherent-power fee sanction would require separate notice, appropriate findings—including bad faith where required—and a causal relationship between sanctioned misconduct and the fees imposed. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107–09 (2017). The Report does not make the individualized findings or identify the independent procedure necessary to sustain that award under inherent authority. The Court declines to supply them sua sponte on this record.

The Court accordingly **SUSTAINS Objection 10 IN PART**, **SETS ASIDE** the portion of DE 177 granting DE 100 and awarding attorney's fees and costs, and

**DENIES DE 100** insofar as it seeks sanctions under Rule 11. The fee affidavits (DE 185, 188, 189) do not support an award after the underlying entitlement has been set aside. The Court makes no finding that the deficient DE 89 was properly prepared or filed; Plaintiff remains bound by Rule 11 and the Court's orders. This disposition rests on the authority and procedure for the monetary sanction, not approval of Plaintiff's filing practices.

A separate fee request appears in Shuler and WCDC's motion to dismiss. (DE 47 at 18.) They invoke 42 U.S.C. § 1988(b), a different fee-shifting provision from Rule 11. Even assuming those Defendants qualify as prevailing parties, the higher standard for an award to a prevailing civil-rights defendant requires a showing that the plaintiff's federal claims were "frivolous, unreasonable, or without foundation." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)); *see also Hughes v. Rowe*, 449 U.S. 5, 14–15 (1980) (per curiam). That the claims fail under Rule 12(b)(6) does not alone establish the additional predicate for fee shifting. The Court makes no such finding here and DENIES the independent § 1988 request in DE 47. This ruling is distinct from the procedural grounds for denying DE 100.

**F. State-Law FOIA Claim and Remaining Matters (Objection 14)**

The Report recommended remanding the remaining SCFOIA claim after dismissal of the federal claims. (DE 177 at 13–14, 18.) Plaintiff objects to remand only insofar as it follows dismissal of the federal claims and requests reconsideration if any federal claim survives. (DE 181 at 12.) Because the state claims arose from the same controversy as the federal claims, the Court could exercise supplemental

jurisdiction under 28 U.S.C. § 1367(a). *See City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164–66 (1997). But that authority does not require federal adjudication of every related state-law claim. *Id.* at 172–74. Section 1367(c)(3) permits the Court to decline supplemental jurisdiction after dismissal of the claims supplying original jurisdiction. Judicial economy, convenience, fairness, and comity guide the decision. *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988); *Hinson v. Norwest Financial South Carolina, Inc.*, 239 F.3d 611, 616–17 (4th Cir. 2001). The Court has addressed the fully briefed, facial pleading deficiencies of Count VII under settled state-law tort principles, without resolving any disputed state-law issue or factual merits. Count VI, by contrast, concerns administration of South Carolina's public-records statute and the scope of governmental disclosure obligations. (DE 18 ¶¶ 58–61.) No federal claim remains, and this case has not advanced beyond the pleading stage. Considerations of comity and judicial economy favor allowing the South Carolina courts to determine that remaining statutory claim. The Court, therefore, declines to exercise supplemental jurisdiction over Count VI and REMANDS it to the Williamsburg County Court of Common Pleas. The Court expresses no view on the merits of the SCFOIA claim or the defenses to it.

The Magistrate Judge terminated DE 29, 35, 106, and 132; denied DE 44, 70, 138, 139, 155, and 162; and granted DE 158. (DE 177 at 17.) Except for the sanctions ruling expressly set aside above, the Court finds no clear legal or factual error requiring modification of those ancillary dispositions. The pending objection to the discovery stay (DE 145), if still pending, is **DENIED AS MOOT** in light of the

resolution of the federal claims and remand. No award is entered based on the submitted fee affidavits.

## IV. CONCLUSION

For the foregoing reasons, after independent review of the Report, the objections, and the relevant record, the Court **ADOPTS AS MODIFIED** the Report and Recommendation (DE 177) as to the recommended dismissal and remand. Plaintiff's objections (DE 181) are **OVERRULED**, except that Objection 10 is **SUSTAINED IN PART** as to monetary sanctions. Plaintiff's objections to the denial of leave to amend (DE 136) are **OVERRULED**, and the Magistrate Judge's June 9, 2026, order (DE 119) is **AFFIRMED**.

The County Defendants' Motion for Partial Dismissal (DE 45) is **GRANTED**. Shuler and WCDC's Motion to Dismiss and for Attorney's Fees (DE 47) is **GRANTED IN PART** as to Counts I–V and VII and **DENIED IN PART**, without prejudice, insofar as it seeks dismissal of Count VI; its separate request for fees is **DENIED**. Counts I–V and VII of the First Amended Complaint (DE 18) are **DISMISSED WITHOUT PREJUDICE**. Insofar as Plaintiff seeks to recover injuries belonging exclusively to Just Us CPP, she cannot pursue those organizational claims in her individual capacity. Her distinct federal claims and the personal state-law tort theories identified in Count VII are dismissed for failure to state a claim under Rule 12(b)(6), on the grounds discussed above. The Court expresses no opinion on the merits of Count VI, the South Carolina Freedom of Information Act claim, or its proper parties. The Court declines supplemental jurisdiction over Count VI under 28 U.S.C. § 1367(c)(3), and that surviving claim is **REMANDED** to the Williamsburg

County Court of Common Pleas. Plaintiff's requests for preliminary and mandamus relief (DE 7, 83) are **DENIED**.

The portion of DE 177 granting Defendants' motion for sanctions and directing an award of attorney's fees and costs is **SET ASIDE**. Defendants' motion for sanctions (DE 100) is **DENIED**. The associated fee affidavits (DE 185, 188, 189) require no further adjudication. Plaintiff's motion concerning supplemental exhibits (DE 182) is **DENIED**; her motion for leave to file a late reply (DE 172) and any remaining discovery-stay objection (DE 145) are **DENIED AS MOOT**. The Magistrate Judge's remaining nondispositive dispositions in DE 177 are undisturbed.

The Clerk is **DIRECTED** to transmit a certified copy of this Order to the Clerk of the Williamsburg County Court of Common Pleas, to mail Plaintiff a copy of this Order at her address of record, and to **CLOSE** this federal action.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
November 23, 2026

**NOTICE OF RIGHT TO APPEAL**

Plaintiff is advised that she may appeal this Order and Opinion to the United States Court of Appeals for the Fourth Circuit by filing a notice of appeal with the Clerk of this Court within thirty (30) days after entry of judgment, subject to the provisions of Federal Rule of Appellate Procedure 4(a). *See* Fed. R. App. P. 3, 4(a)(1)(A).